

Louis V. Fasulo, Esq.– NY & NJ
Charles Di Maggio, Esq.– NY

www.FBDMLaw.com

**Via Electronic Filing**
Hon. Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 14D
New York, New York 10007

February 28, 2023

**Re: United States v. Melvon Adams, 20 CR 628**

Dear Judge Hellerstein,

    I submit this sentencing submission on behalf of Melvon Adams, who is scheduled to be sentenced by this Court on March 14, 2023. Mr. Adams pled guilty to felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Pursuant to a written plea agreement, the Stipulated Guideline range is 57 to 71 months' imprisonment, followed by one to three years supervised release.

    As set forth in its Final Pre-sentence Report (the "PSR"), the United States Probation Office agrees with the parties' Guideline calculation and recommends a 57-month term of imprisonment, followed by three years' supervised release. Probation does not recommend the imposition of a fine due to Mr. Adams's inability to pay, and restitution is not applicable to the offense of conviction.

    Annexed to this submission are eight letters addressed to this Court from Mr. Adams's friends, family and supporters. Despite the instant offense, Mr. Adams is described by those closest to him as hard working, productive, loving, caring, supportive, motivational, intelligent and kind, among many other encouraging attributes. Perhaps most telling is the broad range of support, assistance and guidance pledged by Mr. Adams's friends and family upon his release from incarceration. To this end, Mr. Adams submits his own thoughtful and compassionate letter to this Court, which provides great insight into the life, struggles and anticipated successes of Mr. Adams. This is in despite of his turbulent upbringing [REDACTED]

---

225 Broadway, Suite 715
New York, New York 10007
Tel (212) 566-6213
Fax (212) 566-8165

505 Eighth Avenue, Suite 300
New York, New York 10018
Tel (212) 967-0352
Fax (201) 596-2724

1086 Teaneck Rd, Ste 3A
Teaneck, New Jersey 07666
Tel (201) 569-1595
Fax (201) 596-2724



For the reasons set forth herein, we respectfully submit that a below Guideline term of imprisonment is appropriate to achieve the ends of sentencing.

## Procedural Background

On July 28, 2020, Melvon Adams was arrested by the New York City Police Department (NYPD) following a search of Mr. Adams' apartment by the New York State Department of Correctional Services, Division of Parole. During the search of Mr. Adams' apartment located in the Bronx, New York, parole officers recovered an illegal firearm in a bedroom identified as belonging to Mr. Adams. The search was conducted pursuant to the terms of his parole release following a 2015 state conviction.

Mr. Adams was held in state custody from the time of his arrest until approximately October 16, 2020 when he was transferred to federal custody. He was initial held at the Essex County Correctional Facility but was transferred to Brooklyn's Metropolitan Detention Center in September 2022. He has been continuously detained since his arrest.

On July 14, 2022, Mr. Adams was charged by Indictment with two counts of felon in possession of a firearm (Count 1) and ammunition (Count 2), in violation of 18 U.S.C. § 922(g). On November 17, 2022, Mr. Adams appeared before this Court and pled guilty to Count 1 of the Indictment.

## Offense Conduct

On July 28, 2020, Mr. Adams was subjected to a home search conducted by the New York State Department of Correctional Services, Division of Parole, where a firearm was recovered from his residence. It appears that Mr. Adams was cooperative and assisted parole officers in identifying his bedroom where the firearm was recovered. Mr. Adams admitted his offense conduct before this Court. In addressing this Court at his plea hearing, Mr. Adams is unequivocal in his acceptance of responsibility and has expressed substantial and continued remorse for his conduct.

## Guideline Calculation

The Government, Probation and the defense agree with following Guideline calculation: a base offense level of 24, pursuant to U.S.S.G. §2K2.1(a)(2). A three-point reduction for acceptance of responsibility. U.S.S.G. § 3E1.1(a) and (b), for a total offense level of 21.

225 Broadway, Suite 715  
New York, New York 10007  
Tel (212) 566-6213  
Fax (212) 566-8165  

505 Eighth Avenue, Suite 300  
New York, New York 10018  
Tel (212) 967-0352  
Fax (201) 596-2724  

1086 Teaneck Rd, Ste 3A  
Teaneck, New Jersey 07666  
Tel (201) 569-1595  
Fax (201) 596-2724

Mr. Adams has eight criminal history points stemming from two prior violent felony convictions (six points total) and two additional points because he was on parole when he committed the instant offense. Accordingly, Mr. Adams is in Criminal History Category IV.

With a Total Offense Level of 21 and Criminal History Category IV, the Guideline term of imprisonment is 57 to 71 months', followed by one to three years of supervised release.

### Objections to the PSR

As set forth in Probation's Final Pre-sentencing Report (the "PSR"), Mr. Adams notes two objections: one regarding the inclusion of his social media photos and posts in the PSR, and one regarding his alleged gang affiliation. For the reasons substantially set forth in the PSR [at 16 – 17], Mr. Adams (1) maintains that the inclusion of his social media posts is inappropriate for sentencing, and (2) denies the Government's alleged gang affiliation. Because neither the social media posts nor the alleged gang affiliation is germane to the offense of conviction, Mr. Adams submits that this Court disregard them from its consideration when fashioning the appropriate sentence.

### 18 U.S.C. 3533(a), Booker and the Applicable Sentencing Framework

Pursuant to 18 U.S.C. §3553(a), the Court "shall impose a sentence sufficient but not greater than necessary" to comply with the purposes of sentencing. Thus, the Court must consider: (1) the nature and circumstance of the offense and history and characteristics of the defendant; (2)the need of the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public; (3) all available sentences; (4) the relevant Guidelines ranges, and (5) the need to avoid sentencing disparities.

As this Court well knows, the Supreme Court has determined that the United States Sentencing Guidelines now plays simply and only an advisory role in the overall process of arriving at a sentence that is "sufficient, but not greater than necessary" to meet the purposes of a just sentence; nothing more, nothing less. 18 U.S.C. § 3553(a). The Guidelines carry no presumptive value or weight. Neither may they be presumed reasonable. The Supreme Court made this latter point clearly in *Nelson v. United States*, 129 S. Ct. 890 (2009), where the Court summarily reversed a Fourth Circuit decision that had upheld the application of a presumption of reasonableness to the Guidelines. In reversing, the Supreme Court stated:

> [t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.

*Id*. at 892 (emphasis in original). Thus, the Guidelines are now only one factor to be considered in the formulation of a minimally sufficient individualized sentence.

## Discussion

While it is not uncommon for sentencing courts to find before them defendants who have suffered childhood instability and abuse, Mr. Adams upbringing stands out. He was abandoned by his father at birth. His mother and grandmother got drunk and high in front of him. He regularly witnessed shootings, assaults and stabbings (Probation notes that Mr. Adams recalls witnessing people "being 'chopped' with machetes" [¶ 44]).

When most children learn to ride a bike, Mr. Adams watched drug addicts shoot heroin. When most children worried about homework, Mr. Adams worried about housing. Even when chaos lulled, his environment was grossly unstable; factors which we now know leads to behavioral challenges, anger, depression and anxiety, substance use, decreased social and academic engagement, lack of confidence and self-identity, a higher risk of dropping out of school, and higher risk of engaging in criminal or risky behavior, among many others.

Mr. Adams went to be bed hungry on occasion. He was neglected both physically and emotionally, had no positive role models, and was not taught the value of education. He was stabbed at 12 years old, gang assaulted at 18 years, and shot at 25 years old. A review of his medical records, his personal sentencing letter and the PSR, reveal that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Despite this, Melvon Adams was able to gain meaningful employment beginning in his early twenties and up until a short time before his arrest. While incarcerated on a prior offense, Mr. Adams obtained his GED, which was verified by Probation. He also participated in welding and engine mechanics. PSR ¶¶ 61 - 62.

Most impressive are the substantial and meaningful connections he has made with friends, family and members of his community through his life. He is known in his circle for his compassion, kindness, helpfulness, thoughtfulness, positivity, and overall strong moral character, despite his criminal history. Reverend Latifa Reed, who knows Melvon through her church for over 20 years, notes that he is always looking to help around the church, is a positive mentor to his peers, and is always looking to better himself. She, like many others, offers her full support following his incarceration and is confident that he will have a better tomorrow.

His girlfriend, Ms. Thalia Caquias, writes that,

> [Mr. Adams has] been so supportive mentally physically and emotionally. He's a genuine caring man who cares deeply for his family and friends sometimes more then himself. Melvon has so much passion and drive to be so much better then he shows . His willingness to help others and provide the support one may need has helped me through losing my parents and several other struggles I've dealt with while he's

been incarcerated. Melvon has helped me in so many ways, being honest and straightforward and also genuine. When he was out he would help me a lot with my small business even going as far as taking the steps with me to get a LLC.

Melvon's sister writes that,

> My brother is very hardworking and caring. He puts his family over everything and he always thinks about everyone else before he thinks about himself. Melvon makes sure he motivates me to do what I enjoy. He always throws different business ideas out there for me and even offered to open up a hair salon for me to start my own business. He inspires me to take pride in my work and to do the things I love. He's overall a good and genuine person. I mostly enjoy spending time with my brother, going out on lunch dates and eating dinner with our mother as a family. I miss being able to call him whenever just to bother him, or calling if there's something I need, knowing he would get it for me no matter how much he doesn't want to. He's very generous and works to make sure everyone is happy. An example of this was him buying his girlfriend a dog for her birthday. He loves to see the people he loves the most smiling and that's something everyone loves about him. I don't think my brother is likely to reoffend. I think his time in jail gave him a lesson and made him miss a lot and he realized that.

A review of these letters and other letters reveals the broad range of support Mr. Adams can except following his release from incarceration.

While Probation's concern for recidivism is understood, Probation fails to weigh the growth displayed by Mr. Adams, as expressed in his own words to this Court. He is ready and yearning for better and brighter days. Upon his release, Mr. Adams has potential employment opportunities in construction and working with the elderly, and plans to pursue opportunities in fashion and apparel. To this end, his brand "Right Skin Apparel" is centered around positive body-image, self-confidence, and self-assurance, despite those that may struggle with such issues.

In sum, Melvon Adams is someone who fully understands the err of his ways, and is committed to getting his life back on track. He is open and willing to attend therapy, job skills training, and substance treatment. He is capable of being a positive, contributing member of society and has a broad range of support from his friends and family. Accordingly, it is respectfully submitted that a below Guideline term of imprisonment would be sufficient, but no greater than necessary to comport with the goals of sentencing.

**225 Broadway, Suite 715**  
**New York, New York 10007**  
**Tel (212) 566-6213**  
**Fax (212) 566-8165**

**505 Eighth Avenue, Suite 300**  
**New York, New York 10018**  
**Tel (212) 967-0352**  
**Fax (201) 596-2724**

**1086 Teaneck Rd, Ste 3A**  
**Teaneck, New Jersey 07666**  
**Tel (201) 569-1595**  
**Fax (201) 596-2724**

I thank the Court for its consideration.

Respectfully submitted,

s/Louis V. Fasulo
Louis V. Fasulo
Fasulo Braverman & Di Maggio, LLP
225 Broadway, Suite 715
New York, New York 10007
Tel. 212-566-6213

Cc:    AUSA