

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 7, 2023

**BY ECF**

Honorable Alvin K. Hellerstein
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States* v. *Melvon Adams*, 20 Cr. 628 (AKH)

Dear Judge Hellerstein:

    The Government respectfully submits this letter in advance of the sentencing of the defendant, Melvon Adams, which is scheduled for March 14, 2023. For the reasons set forth below, the Government submits that a sentence of 71 months' imprisonment—at the top of the stipulated Guidelines range—is warranted in this case.

    **I.**    **Background**

    The defendant has a history of extreme violence that includes shooting three separate people. First, in June 2012—when Adams was 18 years old—he shot two people: he shot one victim in the chest and hand, and shot a second victim in the left bicep. *See* PSR ¶ 33. Both victims had to receive medical treatment at the hospital: one victim lost complete use of the victim's hand, and the other victim required surgery to the victim's bicep. Adams was arrested for the shooting in December 2012 and released on bail.

    While Adams was out on bail—in April 2014, when he was 20 years old—he shot a third person, striking the victim in the buttocks after firing multiple shots at him. *See* PSR ¶ 33. That victim was also required to receive medical treatment at the hospital for this injury.

    In connection with these shootings, Adams was ultimately convicted of attempted murder with intent to kill and assault in the first degree. *See* PSR ¶ 33. He was sentenced to 5 years' imprisonment for the attempted murder, and sentenced to 16 months' to 4 years' imprisonment for the first-degree assault.

    While Adams was incarcerated, he was disciplined for possessing gang materials related to the Mac Ballers, in violation of New York DOCCS Rule 105.13, which bans possession of such materials in prison. The Mac Ballers is a violent street gang that engages in murders and other acts of violence. It is a subset of the national Bloods gang. Adams was caught in possession of pieces of paper that included many references to the Mac Ballers: for instance, "I love u Mac, Mac

Hon. Alvin K. Hellerstein
March 7, 2023
Page 2 of 20

Balla!"; "Mac Balla Who They Envy"; and "MB on top." Adams had hidden the Mac Baller gang material in his sock.

Adams was released from prison and onto parole on July 6, 2017. One condition of Adams' parole was that he would permit the search and inspection of his residence and property by parole officers. PSR ¶ 11. Another special condition of release required that Adams not be a member of a gang, not associate with any known gang members, not participate in any gang activities, and not wear, display, distribute, possess, or use any gang insignia or material.

On July 2, 2020, Adams was involved in a melee that appears to have been gang related. The incident occurred near 448 East 186th Street in the Bronx, in an area in which there was a tremendous amount of gang violence in the summer of 2020, including murders and shootings. As shown by surveillance videos, one group of young men confronted another group of young men and started interacting with them. Approximately 40 seconds after the second group arrived, at least two of the men pulled out firearms and started shooting, causing the other men—including Adams—to scatter and flee. One of the men then chased Adams down the street, caught him from behind, and punched him in the head. During this incident, Adams was shot in the arm and hospitalized. Police officers spoke with Adams at the hospital, and Adams stated that he would not assist in the case and wanted nothing to do with it. Adams also refused to identify any of the other men he was with during the altercation.

As Your Honor already concluded, the circumstances of this incident suggest that Adams was hanging out with other gang members and that he was the target of a gang-related attack. *See, e.g.*, Tr. of June 30, 2021 Conference, at 12 (Judge Hellerstein concluding that Adams "was involved with people just before the search who were [in] gangs" and "was a specific target of the gang members who came to do the shooting"); *id.* at 14 (Judge Hellerstein concluding, "There was an intermingling of two gangs. . . . There was a pursuit of the defendant as if he were involved in one of the gangs.").

Given that Adams appeared to be engaged in gang activity, parole officers decided to conduct a search of Adams' residence. At the time, Adams was living at an apartment in the Bronx. During prior home visits conducted by parole officers, Adams had identified his bedroom to parole officers, told the officers that he did not share that room with anyone else, and identified the belongings in the bedroom closet as his. PSR ¶ 12. On July 28, 2020, parole officers searched Adams' bedroom. During the search, the officers found a loose bullet in plain view in Adams' bedroom, on top of a shoebox, and then found a loaded .380 caliber semiautomatic pistol—along with approximately 30 bullets—in the pocket of a green jacket that was hanging in Adams' bedroom closet. PSR ¶ 13.

The Government later obtained search warrants for Adams' social media accounts and his iCloud account. Searches of those accounts revealed photographs of Adams wearing the same green jacket where the loaded gun and 30 bullets were found. Those searches also revealed that this was not the only gun that Adams had possessed in the weeks and months leading up to his arrest; on the contrary, he had possessed many other guns as well during this period. In addition, as discussed below, searches of Adams' accounts revealed that, in the weeks and months leading

Hon. Alvin K. Hellerstein
March 7, 2023
Page 3 of 20

up to his arrest, he (1) repeatedly referred to his possession of guns and to the commission of acts of violence; (2) he repeatedly referred to his continued affiliation with the Mac Ballers gang; (3) he was engaged in the illegal sale of narcotics; and (4) he was engaged in fraud schemes.

Here are some examples of Adams possessing firearms,[1] in addition to the firearm that he was hiding in his bedroom:



---

[1] Contrary to the defendant's claim, *see* PSR p. 16, all of these photographs, posts, and messages were provided to him in discovery.

Hon. Alvin K. Hellerstein
March 7, 2023
Page 4 of 20





Hon. Alvin K. Hellerstein
March 7, 2023
Page 5 of 20





Hon. Alvin K. Hellerstein
March 7, 2023
Page 6 of 20







Adams' accounts also make clear that he is a member of the Mac Ballers. (This is in addition to the other evidence of his Mac Baller membership, including his possession of Mac Baller gang material in prison and his involvement in an apparently gang-related shooting.) For example, on June 18, 2020, just over a month before his arrest, Adams exchanged messages with another individual, who asked Adams, in sum and substance, what gang he belonged to. Adams replied, "I'm Mac Baller."

In other messages, on June 28, 2020, Adams and another individual discuss how they "met at some Mack event." Moreover, Adams' username on Instagram is "papii_flock.703." Mac Ballers use the number "703" to indicate their affiliation with the gang, based on the belief that the gang was founded in July (the 7th month) of 2003. Furthermore, Adams' messages contain many references to "Macs," "Bloods," and the term "ewok." The term "ewok" is commonly used by Mac Ballers to show affiliation with the gang.

Adams' Facebook account also includes the following headline, which states, "They Say MellFlock Cocky cause he stuck in His ImmaculateWayz," followed by the emojis "MB" and the word "GANG."



"Immaculate" is a word used to advertise affiliation with the Mac Ballers, and the emojis "MB" stand for Mac Baller.

There are also photographs on Adams' social media of him displaying gang signs. The Government's gang expert would testify that these gang signs are affiliated with the Mac Ballers.

  



In another photograph, Adams displays a gang sign with the caption "Bloody," a reference to the Bloods gang of which the Mac Ballers are a subset.

Hon. Alvin K. Hellerstein
March 7, 2023
Page 9 of 20



And Adams continued to display Mac Baller gang signs from prison—presumably using a contraband phone—following his arrest in this case:



Hon. Alvin K. Hellerstein
March 7, 2023
Page 10 of 20

In short, there is overwhelming evidence that Adams is a member of the Mac Ballas, including his direct admission that he was a member in June 2020, shortly before his arrest.

In addition to posting about his Mac Baller gang membership, Adams also repeatedly sent messages and posted photographs and videos regarding his possession of guns and ammunition—and his desire to use them to commit violence—in the weeks and months leading up to his arrest. Here are some examples:

- On July 8, 2020, less than three weeks before Adams' arrest, Adams sent another individual a voice message stating, in part, "if they don't up my motherfucking dose, Imma put the gun in the fucking doctor mouth, cuz this shit is killing me."[2]  That same day, Adams sent another individual a voice message stating, in part, "I wake up every morning just ready to shoot somebody, but I can't even cock my shit back, I only got one hand."

- On June 30, 2020, less than one month before the arrest, Adams posted a video of himself wearing a fanny pack and saying, "Word to my mother, I ain't never had a fanny pack on.  If you see me with a fanny pack on, don't run up on me wrong."  A screen shot of the video is below.  As a Government witness would testify, individuals who illegally possess firearms often store them in fanny packs, and "run up on me wrong" means, in sum and substance, to approach aggressively.[3]



---

[2] This is an apparent reference to the injuries Adams sustained in the July 2, 2020 shooting, in which he was shot in the arm.

[3] Adams' account posted this video just two days before he was involved in the apparently gang-related skirmish on July 2, 2020.

Hon. Alvin K. Hellerstein
March 7, 2023
Page 11 of 20

- Between April 23, 2020 and June 22, 2020, Adams' account posted the following posts, all of which refer to guns or ammunition in some manner:



       **June 22, 2020**             **June 16, 2020**            **June 15, 2020**



May 26, 2020        May 16, 2020        May 9, 2020



May 6, 2020        April 23, 2020

- On April 13, 2020, Adams' account messaged other users, in part, "We gotta Strap up guys," a reference to arming oneself with a gun:

> **Author** papii_flock.703 (Instagram: 5749033762)
> **Sent** 2020-04-13 19:24:57 UTC
> **Body** We gotta Strap up guys they trynna get these chips in us too

In short, in the time leading up to the discovery of the gun and ammunition in Adams' bedroom on July 28, 2020, Adams' account repeatedly posted messages, photographs, and videos regarding guns and ammunition—including, but not limited to, those outlined above.

Adams claims that he did not author these posts and that they are just "memes." *See* PSR p. 16. That claim is belied by the evidence. Adams himself posted these photographs and messages, and a review of his social media shows that he is the original author of these posts and that they applied to him personally. For example, many other posts that were clearly authored by Adams and that refer to him personally use the same format as the posts above. For example, the following post was clearly authored by Adams, as it refers to his difficulty opening his medication after he was shot in the arm.



Likewise, the following post was almost certainly authored by Adams (and is not a generic meme), as it refers to his birthday and contains a cartoon image of Adams himself:

Hon. Alvin K. Hellerstein
March 7, 2023
Page 14 of 20



The following post was clearly authored by Adams as well, since he refers to his remaining two years on parole:



These are just a few examples. There are many more where Adams himself posts messages, which were clearly authored by and personal to him, in this format and similar formats. And Adams used a similar format in many of the posts regarding guns and shooting people:

Hon. Alvin K. Hellerstein
March 7, 2023
Page 15 of 20



This similarity strongly suggests that Adams himself authored these posts and that they refer to him personally—just like he authored the posts above regarding his recent injuries, his upcoming birthday, and his time left on parole.

In contrast, when Adams is re-posting a meme, joke, or post from another user—which he did not author—the posts appear in a different format.  In these re-posts, the original post takes up only a portion of the screenshot (often with a reference to the original poster's username or "handle," *e.g.*, "@m.ainfeelings" or "@gillie_da_king"), and sometimes Adams posts his own commentary above the original post.  Here are some examples:

Hon. Alvin K. Hellerstein
March 7, 2023
Page 16 of 20








These show the format of posts where Adams is re-posting someone else's comment or a generic meme. In contrast, the posts regarding guns and ammunition are in the same format as Adams' posts that refer to him personally—including the posts where he discusses his personal injuries, his birthday, and his time remaining on parole. This raises a strong inference that the posts about guns and ammunition were in fact authored by Adams, and also refer to him personally.

Hon. Alvin K. Hellerstein
March 7, 2023
Page 17 of 20

Adams' social media accounts and iCloud also contain clear evidence that, prior to his arrest, Adams was engaged in narcotics trafficking and fraud schemes. The Government also obtained recordings of certain telephone calls that Adams made from prison following his arrest in this case. In multiple calls, Adams discussed possessing contraband, including narcotics, while in prison. He also repeatedly discussed the drug trafficking of narcotics pills, including "blue pills" and "yellows."

## II.  Procedural History

On October 13, 2020, Adams was charged with one count of being a felon in possession of the firearm that was found in his bedroom closet. On July 14, 2022, a Grand Jury returned a superseding indictment charging Adams with one count of being a felon in possession of the firearm from his closet and one count of being a felon in possession of the loose round of ammunition found in plain view on the shoebox in his bedroom.

Trial was set for August 15, 2022, and the defendant indicated his intention to take the case to trial. On March 31, 2022, Adams filed a letter with the Court stating his belief that he was "independent of all laws" and "not bound by any institution formed by his fellow man without his consent." Dkt. No. 36. Adams also incurred disciplinary sanctions while in custody, including for possessing drugs and refusing to obey an order. *See* PSR ¶¶ 6-8.

The Government was fully prepared to try this case starting on August 15, 2022, and the parties arrived at Court to begin trial that day. However, the trial was adjourned and then subsequently adjourned again.

On November 17, 2022, Adams pled guilty to Count One of the superseding indictment, admitting that he knowingly possessed the loaded gun that was in his bedroom closet. Under the plea agreement, the stipulated Guidelines range is 57 to 71 months' imprisonment.

## III.  Discussion

### A.  Applicable Law

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, however, the Court must consider the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, the need to adequately deter criminal conduct and promote respect for the law, and the need to provide restitution to victims. *Id.* at 50 & n.6.

Hon. Alvin K. Hellerstein
March 7, 2023
Page 18 of 20

### B. A Sentence of 71 Months' Incarceration is Warranted

A sentence at the top of the stipulated Guidelines range—*i.e.*, a sentence of 71 months' imprisonment—is necessary to reflect Adams' history of violence and gun use, the seriousness of the offense, the need to adequately deter criminal conduct, and the need to protect the public from further violent crimes by Adams.

*First*, a sentence of 71 months' imprisonment is necessary in light of Adams' history and characteristics. As discussed above, Adams has a history of extremely violent conduct. He has convictions for attempted murder and first-degree assault. He has shot three different people, sending them all to the hospital with serious injuries. He shot these people in the chest, hand, arm, and buttocks. Given his wildly dangerous conduct, Adams is lucky he did not kill anyone. Moreover, Adams committed the third of these shootings while he was out on bail for committing the first two shootings, demonstrating a lack of respect for conditions of community supervision.

Adams also has a repeated history of illegal gun possession. As noted above and as demonstrated by his social media and iCloud, Adams has repeatedly possessed firearms as a convicted felon and repeatedly expressed his desire and intention to use them to commit acts of violence. He has possessed guns with extended clips and lasers. He has told a friend, in a private message, that he "wake[s] up every morning just ready to shoot somebody." He has talked about how he carries his gun in a fanny pack. He has encouraged his allies to arm themselves. And he has threatened rivals that he will shoot or stab them.

In addition, Adams has previously made clear, on multiple occasions, that he is a member of the Mac Ballers, a violent street gang and a subset of the Bloods. Adams attempts to minimize his conduct by claiming that he is not a Mac Baller, but merely "grew up in an area where the Mac Ballers are active." PSR p. 17. But the evidence clearly disproves this claim. As noted above, Adams was disciplined in prison for possessing Mac Baller gang material, which he had hidden in his sock. He was involved in an apparently gang-related shooting shortly before his arrest in this case. And, most tellingly, Adams has *expressly admitted to being a member of the Mac Ballers.* On June 18, 2020, roughly a month before his arrest in this case, Adams was asked what gang he belongs to, and he replied, "I'm Mac Baller." He also messaged someone about how they met at a Mac Baller event. His username on Instagram is a clear reference to the Mac Ballers. His messages contain many explicit references to the Mac Ballers, the Bloods, and the slang they use. And he has posted photographs of himself on social media flashing Mac Baller gang signs—including following his arrest in this case, while incarcerated. In light of this evidence, the Court should reject any claim that Adams is not, in fact, a Mac Baller, but merely grew up in a neighborhood where Mac Ballers are active. In fact, Adams' attempt to lie about his gang activity and affiliation suggests that, notwithstanding his plea, he continues to minimize his conduct and has not taken full responsibility for his actions.

Adams was also engaged in both drug trafficking and fraud schemes prior to his arrest, as demonstrated by his social media accounts and iCloud. In addition, as discussed above, Adams continued to engage in drug trafficking activities even while incarcerated following his arrest, as evidenced by his jail calls. He also committed multiple disciplinary infractions while in prison.

Hon. Alvin K. Hellerstein
March 7, 2023
Page 19 of 20

He continued to display Mac Baller gang signs from prison. And instead of quickly taking responsibility for this offense following his arrest, Adams sent a letter to the Court indicating his belief that he is not subject to federal criminal laws. *See* Dkt. No. 36. These facts cut against the notion that Adams' arrest in this case served as a wake-up call that will change his behavior going forward.

*Second*, the nature and circumstances of Adams' offense are extremely serious, and a sentence of 71 months' imprisonment is necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Adams—a convicted felon prohibited from possessing guns or ammunition—had a loaded gun and approximately 30 bullets hidden in his bedroom. Given Adams' history of violence, his gang affiliation, and the fact that he had just been the victim of a shooting, the most reasonable inference is that Adams had the gun for the purpose of shooting back at rival gang members. This is incredibly dangerous conduct that puts the entire community at great risk. Convicted felons like Adams—who has already shot three different people, attempting to murder them—are not allowed to have guns for good reason. And Adams committed this offense in direct violation of the conditions of his parole, demonstrating—once again—a lack of respect for Court-ordered community supervision. Finally, as noted above, this is not the only time Adams possessed a gun as a convicted felon: the photographs and messages above make clear that Adams repeatedly possessed firearms prior to his arrest, notwithstanding his status as someone previously convicted of violent felonies.

*Third*, the compelling need to afford adequate deterrence to criminal conduct necessitates a sentence of 71 months' imprisonment. Adams has repeatedly returned to criminal conduct even after his prior arrests, convictions, and sentences. The Court should impose a sentence that, unlike Adams' prior sentences, ensures that Adams—and others like him—do not make these types of choices again.

*Fourth*, a sentence of 71 months' imprisonment is necessary to protect the public from further violent crimes committed by Adams. Adams has already tried to kill three people. Following his release from his sentences for those crimes, he returned to repeatedly possessing guns and engaging in gang activity. Given Adams' track record, there is little reason to think he would not, once again, return to gun possession and violence following his release from whatever sentence the Court imposes now. He has repeatedly demonstrated that he has no regard for the lives of others, for the law, for the ban on his possession of firearms, or for the terms of his parole. A sentence of 71 months' imprisonment is therefore necessary to protect the public from further violent crimes by Adams.

### IV. Conclusion

For the reasons set forth above, a sentence of 71 months' imprisonment—at the top of the stipulated Guidelines range—would be fair and appropriate in this case.

> Respectfully submitted,
>
> DAMIAN WILLIAMS
> United States Attorney for the
> Southern District of New York
>
> By: _____/s/_____
> Elizabeth A. Espinosa
> Jim Ligtenberg
> Alexandra Rothman
> Assistant United States Attorneys
> 212-637-2216 / 2665 / 2580

cc: Louis V. Fasulo, Esq. (by ECF)